IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNS CROSSING | : | CIVIL ACTION |
| BUILDERS, et al., | : | |
|     Plaintiffs | : | |
| | : | |
|     vs. | : | NO. 10-3967 |
| | : | |
| JELD-WEN, INC., | : | |
|     Defendant | : | |

## M E M O R A N D U M

STENGEL, J.                                                September  30, 2011

This is a proposed class[1] action brought by the plaintiffs on behalf of themselves and other entities that purchased and installed the defendant's Low-E windows,[2] which the plaintiffs allege contain an inherent defect.  The plaintiffs allege claims for breach of express warranty, common law fraud by omission, breach of implied warranty of merchantability, and in the alternative, unjust enrichment.  They also seek a declaration that the defendant's warranties are void, invalid, and not enforceable.  The defendant has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, to strike various allegations in the complaint pursuant to

---

[1]  The proposed class consists of builders, contractors, remodelers, and developers of new, repaired, or renovated building structures including residential homes that supplied, used, or otherwise installed the defendant's windows.  See Compl. ¶ 1.  On behalf of this proposed class, the plaintiffs seek to certify a Rule 23(b)(2) type of class, and a Rule 23(b)(3) type of class.  Id. ¶ 20.

[2]  "Low-E" is a window industry term for low-emittance.  The glass has been coated with a microscopically thin layer to reduce radiant heat flow.  The complaint alleges that the windows are manufactured in such a way that the Low-E glass leaves the factory with a concave shape resulting in reflective distortion.  Reflective distortion results in outdoor reviewed distortion, i.e., outside looking in distortion, and indoor illumination, i.e., mirror like reflection when inside looking out.

Rule 12(f).  For the following reasons, I will grant the motion to dismiss in part, and deny it in part.

## I.     BACKGROUND[3]

Beginning in approximately 2005, the plaintiffs built seventeen new homes in a residential development in Lititz, Pennsylvania, known as Penns Crossing.  These homes contained the Low-E windows manufactured and sold by the defendant.  See Compl. ¶¶ 2, 15.

In September 2009, the plaintiffs discovered that these windows were reflecting and intensifying sunlight, and melting the vinyl siding of surrounding homes in the Penns Crossing development.  Id. ¶ 19.  The glass reflected light in an amplified manner which caused damage to objects in the light's path.  Id. ¶¶ 7, 10.  Upon discovering this damage, the plaintiffs contacted the defendant and requested repair or replacement of the windows at the defendant's expense.  Id.  In January 2010, the defendant refused the plaintiffs' request.  The plaintiffs then voluntarily expended their own resources to repair or replace the windows.  Id.  The plaintiffs did not know at the time they purchased and installed the windows that the windows contained an inherent defect in that the glass is designed and manufactured with a concave shape that results in reflective distortion.  Id. ¶ 16.  The complaint explains that reflective distortion does not disperse its reflected

---

[3]  The facts are gleaned from the complaint and the extrinsic documents upon which it is based.  See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiffs, as the non-moving parties, and are accepted as true with all reasonable inferences drawn in their favor.

light in a normal pattern but actually focuses and amplifies its reflective light in a point, which results in damage to objects in the reflected light's path.  Id. ¶ 1.

The plaintiffs allege in the complaint that the defendant knew, or should have known but for its reckless indifference, that its windows had an inherent substantial defect or condition, yet failed to disclose that defect or condition to the plaintiffs.  Id. ¶¶ 6-7.  Furthermore, the plaintiffs assert that the defendant knew, or should have known, that it was receiving and would continue to receive reports of problems relating to reflective distortion and/or excessive radiant heat resulting from the windows.  Id. ¶ 10. The plaintiffs also allege that the defendant knew that if it had properly disclosed the defect in its windows, the sale of its windows would have dropped significantly, and the defendant would have lost market share.  Id. ¶ 11.  Despite such knowledge, the plaintiffs insist, the defendant did not disclose to prospective purchasers any of this material information.  Id. ¶ 13.

Finally, the plaintiffs allege that the defendant knew that to avoid further harm caused by the windows, it had to redesign the windows, recall all of the windows, or provide corrective notice prior to sale of the windows.  Id. ¶ 14.  Any corrective notice, the plaintiffs insist, would have had to inform prospective purchasers that when using the windows, restrictive and costly construction alternatives had to be implemented such as installing awnings, use of landscaping to block the window and its reflection, placement of exterior screens on the windows to block the window and its reflection, or installation of capillaries in the windows that would have reduced the useful life of the

windows and otherwise violated other terms and conditions of the defendant's warranty program. Id. ¶ 14.

In their complaint, the plaintiffs claim that the defendant's acts and omissions in connection with its design and sale of these windows constitute common law fraud, result in the breach of express and implied warranties, unjustly enrich the defendant, and warrant declaratory relief.

## II.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent rulings, however, the Supreme Court has rejected language in Conley stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561.

4

Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," Twombly, 550 U.S. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal 129 S.Ct. 1937, 1949 (2009).  "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss."  Id. at 1950 (emphasis added).  In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief.  Iqbal, 129 S.Ct. at 1950 (emphasis added).

## III.   DISCUSSION

### A.  Standing

In its motion to dismiss, the defendant contends that the plaintiffs lack standing because they have not pled facts that show they have suffered an injury.  In particular, the defendant alleges that the plaintiffs neither own a home with defective windows;

own a home with melting siding; nor have received a demand to pay to repair or replace the defective windows.

Standing limits a plaintiff's ability to invoke the power of the federal courts.  In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.  Warth v. Seldin, 422 U.S. 490, 498 (1975).  Because the standing requirement is derived from Article III of the Constitution, it is a threshold inquiry in every case, one for which the party invoking federal jurisdiction bears the burden of proof.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  To meet this burden, the party invoking federal jurisdiction must establish the irreducible constitutional minimum of standing, which is composed of three elements.  First, the plaintiff must have suffered an injury-in-fact, that is, an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of, that is, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Id. at 560-561.  The failure to establish any one of these elements deprives the court of jurisdiction.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-104 (1998).  Only one plaintiff is required to establish standing for a claim to proceed.  Massachusetts v. EPA, 549 U.S. 497, 506 (2007).

The injury-in-fact requirement exists to ensure that litigants have a personal stake in the litigation.  The Pitt News v. Fisher, 215 F.3d 354, 360 (3d Cir. 2000).  It is very generous, requiring only that the claimant allege some specific, identifiable trifle of injury.  Danvers Motor Co, Inc. v. Ford Motor Co., 432 F.3d 286 (3d Cir. 2005); see also Bowman v. Wilson, 672 F.2d 1145, 1151 (3d Cir.1982); United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 689 n. 14 (1973) (an identifiable trifle is enough); Gen. Instrument Corp. v. Nu-Tek Electronics & Mfg., Inc., 197 F.3d 83, 87 (3d Cir.1999) (same); Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 71 (3d Cir. 1990) (same).  In resolving issues of standing, a court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.  Warth, 422 U.S. at 501.

Here, the complaint alleges that the plaintiffs suffered damages by paying out-of-pocket expenses to repair or replace the defective windows.  They discovered that the defendant's windows were reflecting intensifying light and melting the siding of the surrounding homes.  See Compl. ¶ 18.  When the defendant refused to repair or replace their product, the plaintiffs expended their own resources to cure the alleged defects.  Accepting as true all allegations of fact in the complaint as I must, I agree that the plaintiffs' utilization of its own resources to repair and replace the product constitutes an identifiable trifle of injury sufficient to satisfy the injury-in-fact requirement for standing.  See Danvers Motor Co, Inc., 432 F.3d at 294 (noting "While it is difficult to

reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms.")  Accordingly, I will deny the defendant's challenge to the plaintiffs' standing.

### B.  Count One -- Breach of Express Warranty

In Count One, the plaintiffs allege that the defendant's promotional statements, representations, sales, and marketing materials regarding its windows became part of the basis of the bargain between purchasers and the defendant, thus creating express warranties that the product purchased by the plaintiffs would conform to the defendant's representations.  See Compl. ¶ 34.  They further allege that the defendant breached those express warranties because its windows do not conform to the promises or affirmations of fact made by the defendant to the plaintiffs.  Id. ¶ 35.

In its motion to dismiss, the defendant argues that this claim fails because of three inadequacies in the complaint.  First, the defendant asserts that the plaintiffs must plead reliance in order to prevail on their breach of express warranty claim.  Second, the defendant claims that the plaintiffs lack standing under the express warranty.  Third, the defendant argues that allegations of the absence of secondary causes are required to successfully plead a breach of express warranty claim, and that the plaintiffs lack the appropriate allegations to satisfy this requirement.

Under a section entitled, "What This Warranty Covers," the lifetime warranty states,

> Each JELD-WEN product will be free from defects in materials or workmanship to the *original* owner of the *owner-occupied* single-family residence in which they are initially installed for as long as you own and occupy your residence.

<u>See</u> Compl. Exh. A (emphasis added).  There is also a transferability provision which allows the owner-occupied single-family residence warranty to be transferred in the event the original owner sells the residence or it becomes occupied by other than the original owner.  <u>Id.</u>  The warranty also indicates that there is a commercial ten-year limited warranty for other than owner-occupied single-family residences.  <u>Id.</u>  The plaintiffs are "builders, contractors, remodelers, and developers of new, repaired, or renovated building structures."  <u>See</u> Compl. ¶ 1.  Thus, even if it could be argued that the plaintiffs, as builders or contractors, originally owned a residence in which the defendant's windows had been installed, it could not be said that they were the original owner of the *owner-occupied single-family residence*.  Thus, the warranty attached to the complaint, by its own terms, does not apply to the plaintiffs.

Further, I do not agree with the plaintiffs that 13 Pa.C.S. § 2318 protects them as "non-buyers" providing them with the benefit of the same warranty that the buyer received.  Section 2318 provides:

> The warranty of a seller whether express or implied extends to any *natural person* who is *in the family or household* of his buyer or who is a *guest in his home* if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

13 Pa.C.S. § 2318 (emphasis added).  The plaintiffs do not meet these parameters, and as such, this section can provide them no relief.

Accordingly, because the plaintiffs have no standing to assert a claim for breach of express warranty, I will grant the defendant's motion to dismiss Count One.

9

### C.  Count Two – Common Law Fraud by Omission

In Count Two, the plaintiffs allege that the defendant "was in a position of superiority" over them with respect to its knowledge of the alleged defect, that the plaintiffs were entitled to pre-sale disclosure with regard to the alleged defect, and that the defendant failed to make such a disclosure.  See Compl. ¶¶ 38-40.  Because of that failure to disclose, the plaintiffs allege that they have been damaged by purchasing the defective windows.  Id. ¶ 42.

In Pennsylvania, the elements of fraud are: 1) a misrepresentation; 2) material to the transaction; 3) made falsely; 4) with the intent of misleading another to rely on it; 5) justifiable reliance resulted; and 6) injury was proximately caused by the reliance. Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 136 (3d Cir. 2005); see also Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).  In discussing a decision of the Superior Court of Pennsylvania, the Court of Appeals for the Third Circuit noted that "fraud consists in anything calculated to deceive, whether . . . it be . . . by speech or silence.  . . . It is any artifice by which a person is deceived to his disadvantage." Duquesne Light Co. v. Westinghouse Electric Corp., 66 F.3d 604, 611-612 (3d Cir. 1995) (quoting Smith v. Renaut, 564 A.2d 188, 192 (Pa. Super. 1989)).  However, "while a concealment may constitute fraud, mere silence is not sufficient in the absence of a duty to speak."  Id.;  see also Wilson v. Donegal Mut. Ins. Co., 598 A.2d 1310, 1315-1316 (Pa. Super. 1991) (holding that "concealment can be a sufficient basis for finding that a party engaged in fraudulent conduct, however, mere silence is not sufficient in the absence of a duty to speak").  In Estate of Evasew v. Evasew, 584 A.2d 910 (Pa. 1990), the Supreme

Court of Pennsylvania explicitly approved the duty to speak prerequisite, holding that "an omission is actionable as fraud only where there is an independent duty to disclose the omitted information." Duquesne Light, 66 F.3d at 612 (quoting Estate of Evasew, 584 A.2d at 913). In fact, the Supreme Court of Pennsylvania noted that "the tort of intentional non-disclosure has the same elements as the tort of intentional misrepresentation except that in a case of intentional non-disclosure the party intentionally conceals a material fact rather than making an affirmative misrepresentation." Gibbs v. Ernst, 647 A.2d 882, 889 n.12 (Pa. 1994). Pennsylvania courts analyzing whether there was a duty to speak rely almost exclusively on the nature of the contract between the parties and the scope of one party's reliance on the other's representations. Duquesne Light, 66 F.3d at 612. The Third Circuit noted that there was virtually no Pennsylvania case in which a defendant has been held to have a duty to speak when both the plaintiff and the defendant were sophisticated business, entrusted with equal knowledge of the facts, and having equal and ample access to legal representation. Id.

Here, the plaintiffs insist that the defendant had a "duty to speak" because Jeld-Wen was a sophisticated manufacturer in a superior bargaining position over the plaintiffs and were armed with knowledge of the defect that plaintiffs could not plausibly have attained. See Compl. ¶ 38. According to the plaintiffs, this unequal relationship gave rise to a "duty to speak" about the windows' display of reflective distortion and emission of excessive radiant heat. The defendant disagrees and alleges that the plaintiffs have not alleged any fact that would have imposed on the defendant a "duty to speak."

11

At this stage of the proceedings, the exact relationship of the parties cannot be ascertained.  The sophistication of the parties is also unknown.  Accepting the complaint's allegations as true, I will assume for the purposes of this motion that the defendant had a "duty to speak."  The complaint adequately pleads that the defendant is liable because it engaged in deceptive conduct by failing to disclose a material defect in its windows.  The plaintiffs have stated the circumstances of the failure to disclose with enough particularity to apprise the defendant of the claim.  They have alleged the number of homes constructed with defective windows, the location of the homes, the date the defects were discovered, the nature of the defects, the attendant consequences of the defects, the defendant's refusal on demand to repair or replace the defective windows, and the resultant costs incurred by the plaintiffs to repair or replace the defective windows.  See Compl. ¶¶ 10-19.  Further, the plaintiffs allege that they would have purchased the windows from another manufacturer had they known of the concavity defect.  Id. ¶ 41.  These details put the defendant on adequate notice of the alleged fraud to enable it to answer the complaint.  Accordingly, because the complaint states with particularity the circumstances constituting fraud as required by Rule 9(b) of the Federal Rules of Civil Procedure, I will deny the defendant's motion to dismiss Count Two in its entirety.

### D.  Count Three -- Breach of the Implied Warranty of Merchantability

Count Three alleges a claim for breach of the implied warranty of merchantability. The defendant argues that this claim should be dismissed as time-barred.  Under Pennsylvania law, the statute of limitations for breach of an implied warranty is four

years.  See 13 Pa.C.S. §§ 2725(a), (b).  The statute of limitations period begins at the time of the tender or sale of the allegedly defective product and not at the time the breach is discovered or an injury occurs.  Id.; see also Nationwide Ins. Co. v. General Motors Corp., 625A.2d 1172 (1993) (a breach of warranty action accrues on, and suit must be filed within four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered).

The plaintiffs allege that they began to construct the homes beginning in approximately 2005.  See Compl. ¶ 15.  They filed the complaint on August 9, 2010.  The defendant argues that construction of the residences would have necessarily involved the delivery or tender of the defendant's windows.  As such, the defendant insists, the plaintiffs' breach of implied warranty claim expired sometime in 2009, four years after the beginning of construction, rendering this claim time-barred.  I do not agree.

A careful reading of the paragraph in question reveals that the timing involved here is not as straightforward as the defendant suggests.  Paragraph 15 of the complaint states:

> Beginning in *approximately* 2005, Plaintiffs have constructed approximately 17 new homes containing Jeld-Wen Low-E windows in the Penns Crossing residential development located in Lititz, Pennsylvania.

Compl. ¶ 15 (emphasis added).  The defendant makes the assumption that the defendant's windows had been delivered immediately upon the beginning of construction.  That assumption is premature.  At this point in the case, there is no evidence to support when the windows were delivered.  There is also no evidence that construction of all seventeen

of the homes was begun at the same time, or that all of the windows were delivered

simultaneously.  Thus, this issue is not ripe for resolution at this stage of the proceedings.

The plaintiffs are entitled to develop the factual record on the statute of limitation issue

through discovery and additional investigation.

The defendant argues, in the alternative, that if the plaintiffs' claim is not time-

barred, it would still fail because the plaintiffs have failed to allege that there are no other

causes of the alleged damage.  Altronics of Bethlehem, Inc. v. Repco., Inc., 957 F.2d

1102, 1105 (3d Cir. 1992).  The defendant contends that there are numerous variables,

based upon current technical literature, which contribute or cause the alleged damages

asserted by the plaintiffs, and the plaintiffs' failure to allege the absence of these

reasonable secondary causes requires dismissal of their implied warranty claim.  This

argument is also premature.

The implied warranty of merchantability arises by operation of law and serves to

protect buyers from loss where the goods purchased are below commercial standards or

are unfit for the buyer's purpose.  Id.  In order to be merchantable, goods must be "fit for

the ordinary purposes for which such goods are used."  13 Pa.C.S. § 2314(b)(3).  To

establish a breach of the implied warranty of merchantability, a plaintiff must show that

the goods they purchased from a defendant were defective.  Altronics, 957 F.2d at 1105.

One way to demonstrate a defect is by the submission of circumstantial evidence.  Id.

Under Pennsylvania law, a product may be found defective if it "functioned

improperly in the absence of abnormal use and reasonable secondary causes."  Id.  Here,

while the plaintiffs will be required "to shoulder the burden not only of demonstrating a

14

malfunction, but of negating abnormal use and other causes," id., it is too early to make those demonstrations at this stage.  Accordingly, I find that the plaintiffs have sufficiently pled enough factual allegations, entitled to a presumption of truth, which plausibly suggest an entitlement to relief.  Iqbal, 129 S.Ct. at 1950.  I will deny the defendant's motion to dismiss Count Three.

### E.  Count Five – Request for Declaratory Relief

In Count Five, the plaintiffs allege that there is an actual controversy between the parties concerning "the validity of the warranty on Jeld-Wen's Low-E windows, and concerning installation and other defenses to otherwise valid warranty claims."  See Compl. ¶ 60.  The plaintiffs also allege that the defendant "has wrongfully denied warranty claims based on installation and other defenses despite the root cause of the defect being a step or steps in the manufacturing process."  Id. ¶ 62.  Citing 28 U.S.C. § 2201, the plaintiffs seek a "declaration that the Jeld-Wen window warranties regarding the time limitations on manufacturing defects in material or workmanship are void, invalid and not enforceable, as well as other declarations necessary to resolve the controversy."  Id. ¶ 63.

Initially, the defendant argues that Count Five should be dismissed because the express terms of the warranty do not apply to the plaintiffs because the plaintiffs are not the "original owner[s] of the owner-occupied single-family residence[s] in which [the windows] are initially installed."  This argument fails.  Although I granted the defendant's motion to dismiss Count One, I denied the motion to dismiss Count Three.

The plaintiffs' claim for breach of implied warranty of merchantability remains.  Thus, the plaintiffs have standing to pursue Count Five in the context of that claim.

Next, the defendant argues that Count Five should be dismissed because, just as the "plaintiffs have failed to articulate an 'injury-in-fact' that suffices for standing in this case," for the same reasons, they have failed to articulate the type of "actual controversy" that suffices for standing in a declaratory judgment action.  The defendant contends that nothing could be more hypothetical or speculative than a ruling declaring the rights, under the warranty, of persons whose windows have yet to manifest the alleged defect.  Again, I must disagree.

Article III of the Constitution limits the federal judicial power to cases or controversies, thereby requiring as an irreducible minimum that there be (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.  Khodara Environmental, Inc. v. Blakey, 376 F.3d 187, 193 (3d Cir. 2004) (quoting United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 551 (1996)).  These requirements ensure that plaintiffs have a personal stake or interest in the outcome of the proceedings, sufficient to warrant their invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on their behalf.  Khodara Environmental, Inc., 376 F.3d at 193 (quoting Joint Stock Society v. UDV North America, Inc., 266 F.3d 164, 175 (3d Cir. 2001) (quoting Wheeler v. Travelers Ins. Co., 22 F.3d 534, 537-538 (3d Cir. 1994)).  A plaintiff has Article III standing if there is a substantial controversy, between parties having adverse legal interests, of sufficient

16

immediacy and reality to warrant the issuance of a declaratory judgment.  Khodara
Environmental Inc., 376 F.3d at 193-194 (quoting The St. Thomas-St. John Hotel &
Tourism Ass'n v. Virgin Islands, 218 F.3d 232, 240 (3d Cir. 2000)).

Section 2201 of Title 28 provides that "[i]n a case of actual controversy within its
jurisdiction . . . any court of the United States . . . may declare the rights and other legal
relations of any interested party seeking such declaration, whether or not further relief is
or could be sought."  28 U.S.C. § 2201(a).  The actual controversy requirement refers to
Article III's "case or controversy" requirement.  MedImmune, Inc. v. Genentech, Inc.,
549 U.S. 118, 126-127 (2007).  Thus, for a plaintiff to have standing to seek a declaratory
judgment, he must allege facts that show a "definite and concrete" dispute between the
parties, the dispute must be "real and substantial" and must "admit of specific relief
through a decree of a conclusive character, as distinguished from an opinion advising
what the law would be upon a hypothetical state of facts."  MedImmune, 549 U.S. at 127.
The plaintiffs must have standing and "the issue presented to the court [must] be ripe."
Lujan, 504 U.S. at 560.  A controversy is "ripe" if the question presented is "entirely or
substantially a question of law and postponing a decision would work a substantial
hardship on the challenging party."  Abbott Labs. v. Gardner, 387 U.S. 136, 149-150
(1967)).

Here, the plaintiffs have sufficiently alleged an injury-in-fact.  There are
allegations of the plaintiffs' sustaining economic injury as a direct causal result of the
defendant's actions and inactions.  The plaintiffs maintain that the Jeld-Wen Low-E
windows left the Jeld-Wen factory with a concave shape resulting in reflective distortion,

and that the defendant knew the defect existed before the plaintiffs purchased the windows.  See Compl. ¶¶ 1, 7, and 17.  The plaintiffs also have alleged that they reasonably expected that a manufacturer would have indemnified its customers for the damages caused by its product, i.e., that Jeld-Wen would not leave its customers responsible to pay for the damages caused by the reflected amplified light, such as melted siding, because the potential causes of the defect are within the control and responsibility of the manufacturer.  Id. ¶ 9(c).  Rather than hypothetical or abstract, these allegations demonstrate a substantial controversy, and are ripe for resolution.

Because the plaintiffs have properly pled all of the elements to satisfy 28 U.S.C. § 2201, dismissal at this stage is inappropriate.  Accordingly, I will deny the defendant's motion to dismiss Count Five.

### F.  Motion to Strike

In the alternative to dismissal of the complaint in its entirety, the defendant asks the court to strike various allegations from the plaintiffs' complaint.  It seeks to strike all class allegations from the complaint, see Compl. ¶¶ 1, 4, 6-9, 12-14, 20-31, 34-36, 38-41, 44-48, 50-58, and 60-63; all portions of the complaint that contain allegations concerning "solar reflection" and "vinyl distortion, see id. ¶¶ 1, 6-14, 16, 38-42, and 50; and certain portions of the complaint that seek to require the defendant to "establish a program to inspect, replace, and install" the windows, see id. ¶¶. 11, 12, 14, 16, and 17.  Pursuant to Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED.R.CIV.P. 12(f).  The purpose of a motion to strike is to clean up the pleadings, streamline litigation,

and avoid unnecessary forays into immaterial matters.  <u>See</u> <u>Natale v. Winthrop Resources</u> <u>Corp.</u>, 2008 U.S. Dist. LEXIS 54358 (E.D. Pa. July 9, 2008).  Relief under Rule 12(f) is generally disfavored, and will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."  <u>Id.</u>  The defendant has not demonstrated that the plaintiffs' allegations have no relationship to this controversy or that they will cause prejudice.  Accordingly, I will deny the motion to strike.

An appropriate Order follows.